No. 102.—JOHNSON SPRINGER, ex'or, plaintiff in error, *vs.* THADDEUS OLIVER, adm'r, defendant in error.

A will directed the executor to sell the residue of the estate, and divide the money thence arising, among six named persons. The executor deposited the part of the money coming to one of the six persons, an adult, in a bank, where it lay, without profit to the executor, for some years. This act of the executor was done under legal advice, and it had the sanction of the Court of Ordinary.

*Held,* That the executor was not liable for interest on the money, while it lay in bank.

In equity, in Marion Superior Court. Tried before Judge WORRILL at March Term, 1856.

This was a bill filed by Thaddeus Oliver, administrator of Ibnijah Joyce, deceased, against Johnson Springer, executor of Jesse Cherry, deceased, for an account, &c.

The main question in the case, was as to the liability of defendant for interest on the amount admitted by his answer to be in his hands, and which he claimed to hold free of interest from 1843 up to 1849.

Jesse Cherry, defendant's testator, died in the county of Jasper, in the year 1841, leaving a considerable estate, and appointed Johnson Springer his executor, who duly qualified, and assumed the execution of his will.

By the last clause of said will, testator bequeathed as follows, to-wit:

" Lastly I appoint my worthy friend, Johnson Springer, my executor of this my last will and testament, and my will and desire is that my executor shall sell the balance of my estate, that I have not given away, and when the money is collected it shall be divided with my two sisters children, Elizabeth Joyce and Martha Lilly, to-wit: Ibnijah Joyce, Daniel Joyce, John Joyce, Elizabeth Harwell, Sarah Coughton and Naomi Lilly."

In the year 1845, said Ibnijah Joyce, one of said legatees,

died intestate in the State of Illinois, without having received from the executor his legacy. Thaddeus Oliver, the complainant, took out letters of administration on his estate in Georgia, and filed this bill against the executor for an account, and claiming one-sixth part of the residuary legacy—some of the legatees named in the bequest having died before testator, and their shares having descended to the survivors.

Defendant in his answer admits that the residuum of the estate bequeathed in the last clause of testator's will, amounts to the sum of $12,578 46, and the share of plaintiff's intestate amounts to the sum of $2,096 07. That said sum came to defendant's hands on the 25th December, 1842, and was deposited in the Branch of the Bank of the State, in the town of Eatonton, and in 1843, he had a notice published in the *Southern Recorder*, a newspaper published in Milledgeville, Geo., (and in said notice requested the *Tuscaloosa Monitor* to copy the same three times), to *Ibnijah Joyce* and other legatees, to come forward and receive their legacies. That neither the said Ibnijah, nor any one for him, called for or demanded said legacy, and that the same remained unproductive and without bearing interest until the year 1849; and during this period said defendant claimed and insisted that he was not liable to account to defendant for interest on said sum. It also appeared that the defendant in his annual return for 1845, stated that he had deposited "the money of the estate" in the branch bank aforesaid, and that this return had been admitted to record by the Court of Ordinary.

*Joshua Hill, Esq.*, an attorney at law, was examined on the part of defendant, by commission, who testified, that he was acquainted with defendant, but was little, if at all, acquainted with complainant. That he did for several years act as the attorney at law of defendant in the management of Jesse Cherry's estate; that he did not have Cherry's will before him, but his recollection was that he advised the defendant, as executor, to reduce the estate to money, and be.

prepared at any time to pay the residuary legatees, and as. many of them lived remote from defendant, and the residence of some he did not know at all, to place the funds in some safe bank, such as the Branch of the Bank of the State of Georgia, at Eatonton, and there let it remain until called for by the legatees. That he advised him to advertise in some paper having a good circulation, for the absent legatees to come forward and receive their legacies, and in the meantime to stand prepared by making a deposit in safe banks, to pay such legacies, and not to lend to any one, unless he felt positively certain it would be paid when called for, and in this he would have to exercise great caution, and it was best to deposit it.

Defendant also proved the publication of the notice in the. *Southern Recorder*.

The testimony being closed, defendant's counsel requested the Court to charge the jury, that if they believed the facts stated in the answer to have been proven, that then the defendant was not liable for interest up to the year 1849, which request the Court refused, but charged the jury, that although the facts stated in the answer might be true, yet the defendant was chargeable with interest up to the year 1849, as well as after that time, except for the year 1843, he being entitled to one year, to invest or pay out the legacies.

To which charge and refusal to charge, defendant, by his counsel excepted, and assigns the same as error.

BLANFORD & CRAWFORD, for plaintiff in error.

SMITH & POU, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

It appears that the will, after giving off two legacies, directed the executor to convert the residue of the estate into

money, and then, to divide the money among six nephews and nieces of the testator, Ibnijah Joyce, the intestate of the complainant, being one of the six; that the executor, after paying the two legacies, did convert the residue of the estate into money; and that afterwards, some time before February, 1845, he deposited the share of this money coming to Ibnijah Joyce, in bank, where it remained till 1849, without profit; that he did this act in pursuance of legal advice; that he reported the act to the Court of Ordinary in his return for the year 1845, and that the return was admitted to record by that Court.

It also appears that Ibnijah Joyce, at the time when the money was deposited in the bank, resided in Illinois; and that notice to him or his legal representatives, was published in a newspaper of this State, and was directed to be published in a newspaper of the State of Alabama, in which State, the executor supposed Joyce or his representatives to reside.

The question was, whether the executor was liable for interest on the legacy, for the time during which it remained in bank as aforesaid. The Court below held that he was. I think that he was not.

I admit, that if it was the *duty* of the executor to lay out the money of which the legacy consisted, for the benefit of the legatee, instead of letting the money lie idle in bank, the executor was liable for interest on the money. 2. *Wms. Ex'ors*, 1309. But I deny that this was his duty,—his duty under the circumstances of the case, as above detailed. And I do so for these reasons:

1st. It is the privilege, it it is not the duty, of an executor (or administrator), to keep on hand such a quantity of money as will be sufficient to satisfy undisputed debts outstanding against the estate, and to meet other similar exigencies, to which he may know that the estate will be subject. *Id.*, 1310.

Now, at the time when the money representing the legacy aforesaid, was deposited in bank, the administration had ad-

vanced to a stage at which the amount of the legacy had been ascertained, and at which the legacy had become *due.* At this time, then, the executor was in a situation in which he would be bound to pay to the legatee the legacy whenever the latter might-call for it.

It was, therefore, the privilege, if it was not the duty, of the executor to keep himself in a state of readiness to meet this demand, whenever it might present itself. And it was such a demand that it might present itself at any moment.

That the legatee resided out of the State, could have made no difference. There is no provision in the law, for the notification to legatees of their legacies. And, therefore, in respect to such notification, the condition of a legatee residing out of the State, is, *under the law,* as good as that of a legatee residing in the State.

It would, perhaps, have been *allowable* for the executor to invest the money constituting the legacy in State "securities." But the Act in respect to investments in such securities, is an Act conferring an authority—not one imposing a duty. And it is, at least, doubtful, whether the Act extends to cases in which the fund is one that may be needed by the executor at any moment, for the payment of debts. *Cobb Dig.* 333.

2d. It is the privilege, if it is not the duty, of an executor (or administrator), to do what he is authorized to do by the Court of Ordinary.

The jurisdiction of that Court over executors and administrators is very extensive. It extends to "all testate and intestate estates," to the appointment of "administrators," to the qualification of executors and administrators, and, to "all such other matters and things as appertain or relate to estates of deceased persons." *Pri. Dig.,* 239.

The jurisdiction includes specifically, the right of the Court to have, annually, from executors and administrators, " a full and correct account of the estate and condition" of the estate in their hands; and it imposes the duty on the

Court to examine such accounts, and then to "approbate or reject them" *Id.*, 240.

The jurisdiction includes a large remedial power. The Act of 1821 on that subject, has these words—"when such Court shall know, or be informed that any such guardian, executor, or administrator shall waste or in any manner mismanage the estate of such orphan or deceased person," "or where such executor, or administrator, or guardian, shall fail to make returns within the time prescribed by law," "said Court" "may, and are hereby authorized and empowered to revoke the trust confided to him, her, or them, or pass such other or further order as said Court may think expedient and fit." °

These are some of the grants of power to the Court of Ordinary.

A Court with such powers, might, in my opinion, have legally authorized the executor to pursue the course which the executor in this case did pursue.

And the Court of Ordinary of the proper county, did, in fact, authorize him to pursue that course. For it "approbated" his return which contained a statement of the course he had pursued; viz: a statement that he had deposited the money in bank. And every ratification is equal to an original authorization.

3d. It is declared by the Act of 1840, "for the relief of executors," and, that "when any executor" "shall have given and published the notice now required by law, of his or her application to the proper Court for letters of dismission," "and it shall appear that there are any moneys in his or her hands due the estate," "and no person claiming the same, such Court shall, in their discretion, pass an order authorizing said executor to retain the amount in his or her hands until the further order of the Court, at an interest not exceeding four per cent. per annum; or requiring him or her to deposit said amount in such solvent bank as the Court may direct, subject to the order of the Court." *Cobb Dig.*, 332.

At the time when this executor made this deposit, the estate was in a condition which would have authorized the executor to apply for letters of dismission.

Now, if the executor had applied for such letters, the result would probably have been the same as was the result of that course which he did pursue. The money constituting the legacy, would, probably, have got into a bank as a deposit. That certainly would have been the result at the option of the executor. The money would have gone into bank, unless he had chosen to keep it on the terms of paying interest on it at four per cent.

4th. Is it any part of the duty of an executor to manage the fund of a legatee who is *sui juris*, and whose right to the fund has *fully vested?* I doubt extremely if it is.

For these reasons, I think that the executor was not liable for interest on the legacy, for the time during which it remained in bank.

And I am the better satisfied with the conclusion, because it is one which, as it seems to me is equitable, as well as legal. The executor acted openly; acted in good faith;. made no profits. Before acting, he took legal advice; after acting, he communicated his act to the Court to which it ought to have been communicated.

Judgment reversed.

LUMPKIN, J. concurred.

MCDONALD, J. dissenting.

The plaintiff in error had fully administered the estate of his testator, except the legacy of the intestate of the defendant in error. That legacy was in his hands in money. He was anxious to dispose of that so as to relieve himself from responsibility. He consulted counsel, who advised him to deposit the money in bank, and advertise for legatees to come

forward and receive it. He adopted this course, and in his returns to the Court of Ordinary, stated the fact that he had so deposited it. His returns were passed by the Court. He deposited the money in the bank in 1843, and in 1849 he withdrew it.

The legatee resided in the State of Illinois, and never applied for the legacy. He died, and the defendant in error administered on his estate. The administrator claimed interest on the legacy for the time it was on deposit, and the Court below held that he was entitled to it. This decision was excepted to, and a majority of this Court has reversed the judgment. Being of the opinion that the decision of the circuit Judge was right, I proceed to assign my reason for dissenting from the judgment of this Court.

If an executor keeps money in his hands, bringing no interest, without necessity, he is guilty of negligence and a breach of trust. 3. *Bro. Ch. Cases*, 73. *Ib.*, 108. *Ib.*, 433. He is liable to interest in such cases. The facts of this case show that it was proper for the executor to keep the money in hand for a reasonable time, until enquiry could be made for the party entitled to it. Of the length of time to be allowed for this enquiry, the Court should judge. From the year 1843 to 1849, was certainly most too long. A few months, it seems to me, would have been sufficient.

If the executor seeks to justify himself in depositing the money in bank, and allowing it to lie there, unproductive, under legal advice, he cannot do it. He followed the advice of counsel at his peril. He would have been protected by the direction of a Court of Chancery, and if he chose to retain the executorship, he ought to have sought that.

But he might have been dismissed from his executorship, upon application to the proper authority, and then have retained the money at an interest of 4 per cent., or have deposited it in bank, subject to the order of the Court, as the Court might have ordered and directed. *Cobb*, 332.

He chose to retain the money, and deposit it in bank, in the ordinary way, subject to his own order. He cannot be in a better condition by pursuing this unwarranted course, even by the advice of counsel, that he would have been, if he had pursued the course above indicated; and no Court of Equity would have directed him to have deposited the money without interest. That he did not know at what time the person entitled might appear, is no excuse. "Outstanding demands, on probable grounds, are no reason why the executors should not lay the testator's money out." 2, *Wms. on Ex'rs*, 1318. If, after advertising for the legatee, and waiting a reasonable time for him or his representatives to present themselves, the executor had laid the money out, when they did present themselves, they would have been compelled to wait until the money could be called in; and if they had sued without allowing time for that, all costs and expenses would have been paid from the fund, if it appeared that the executor had, in no other way, been guilty of a breach of trust.

But the advice of counsel may have been in conformity with law, for if it went to the extent only, of advising a deposit in the bank, as a place of safety, until the executor could advertise a reasonable time for the legatee, it was correct.

But it is insisted that the fact that the money was deposited in bank was stated in the returns to the Court of Ordinary, and the returns were passed by the Court, is the judgment of the Court that the money should be so deposited. I think not. It is no judgment of the Court upon any matter, except that he had collected, and had in hand, that amount of money, which he had deposited in bank. I cannot recognize the principle that a trustee can relieve himself from the payment of interest, by the simple statement, in his return, that he had deposited in bank, the money of his *cestui que trust*. It is there subject to his order. It is nothing more than an acknowledgment to the Court that he has so much money

in hand. The Court had no right to object to his putting it in bank, or in any other place of safety, until he had an opportunity to invest it.

I think that the executor was liable to the payment of interest, and that the judgement of the Circuit Court ought to be affirmed.